IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:23-CV-00196-FL

| | |
|---|---|
| LYNN VITELLO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| SIMEON RAMSDEN; KIPLING VENTURES HOLDING CO LLC; KIPLING VENTURES, LLC; KIPLING RESERVE LLC; RESERVE OWNERSHIP GROUP LLC; KEOWEE RIVER CLUB, LLC; and KRC GOLF GROUP, LLC, | ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |

ORDER

This matter is before the court on plaintiff's motion to remand to the to the Superior Court of Wake County, North Carolina pursuant to 28 U.S.C. § 1447(c). (DE 22). The issues raised have been fully briefed, and in this posture are ripe for ruling. For the reasons that follow, plaintiff's motion is granted.

### STATEMENT OF THE CASE

Plaintiff commenced this action in state court on January 19, 2023, to recover unpaid wages under the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-250.1 et seq. Plaintiff seeks $313,500.00 in back wages, compensatory damages, liquidated damages, and attorneys' fees.

Defendants KRC Golf Group, LLC; Reserve Ownership Group LLC; and Keowee River Club, LLC ("removing defendants") removed to this court April 14, 2023, asserting defendant

Kipling Ventures, LLC was fraudulently joined and so could be disregarded for jurisdictional purposes. Amongst the remaining parties, removing defendants provided that there was complete diversity and the requirements of 28 U.S.C. § 1332 thus were satisfied.

Plaintiff now moves to remand the case back to state court, contending that Kipling Ventures, LLC was not fraudulently joined, and complete diversity is accordingly lacking. In support of remand, plaintiff relies upon her affidavit, "Kipling Ventures" marketing materials, and emails pertaining to the relationship between defendant companies. Defendant responded in opposition with reliance upon declaration by defendant Simeon Ramsden ("Ramsden"). Plaintiff replied in support.

Discovery in this action has commenced and is due to be completed by February 2, 2024.

**STATEMENT OF FACTS**

The facts alleged in plaintiff's complaint may be summarized as follows. Defendants Kipling Ventures, LLC; Kipling Ventures Holding Co LLC; and Kipling Reserve LLC "are real-estate development companies that primarily focus on purchasing and developing private golf communities." (Compl. ¶ 21). Plaintiff refers to these three companies collectively throughout the complaint as "Kipling Ventures." (Id.). "[T]he primary asset owned collectively by Kipling Ventures is The Reserve at Lake Keowee," located in Sunset Pickens County, South Carolina. (Id. ¶¶ 21, 23). Management and development of the Reserve at Lake Keowee also is the "primary business of Kipling Ventures." (Id. ¶ 23). Removing defendants "were created and maintained by Kipling Ventures for the management of The Reserve at Lake Keowee." (Id. ¶ 25). Defendant Ramsden and nonparty Kyle Corkum ("Corkum") were "co-founders and partners of Kipling Ventures, and both individuals acted in a high level-managerial capacity" of defendants. (Id. ¶ 26). Defendant Ramsden "acted as the Chief Executive Officer of Kipling Ventures." (Id. ¶ 27).

Defendant Ramsden and Corkum hired plaintiff in August 2020 "to be Kipling Ventures' Assistant Vice President of Marketing / Vice President of Strategic Communications." (Id. ¶ 29). Plaintiff was promised a salary of $200,000.00 per year, in addition to 2% of the profits of Kipling Ventures. (Id. ¶ 31). During her employment, defendant Ramsden served as plaintiff's "immediate supervisor and continually instructed her regarding specific assignments and job responsibilities." (Id. ¶ 33). As directed by defendant Ramsden, plaintiff's primary responsibility "was with respect to the acquisition, and then management, of The Reserve at Lake Keowee." (Id. ¶¶ 30, 34, 36). Plaintiff "regularly traveled to The Reserve at Lake Keowee to meet with Defendant Ramsden and other officers, directors, and employees of Kipling Ventures" and removing defendants. (Id. ¶ 36). In the regular course, however, plaintiff worked from her home office in Wake County, North Carolina. (Id. ¶ 37).

"Plaintiff was successful in her role with Defendants and accomplished all goals and achievements expected of her." (Id. ¶ 45). Nevertheless, "[t]roughout 2021 and 2022, Defendants systematically withheld Plaintiff[']s wages." (Id. ¶ 43). "In the two years Plaintiff was employed by Defendants, she was paid a total of $86,500.00." (Id.). Pursuant to her employment agreement with defendants, "the wages she was promised in that two-year period totaled $400,000.00, plus 2% of the profitability of Kipling Ventures." (Id.). Defendants terminated plaintiff's employment September 8, 2022, "though a mailing sent to her home in North Carolina." (Id. ¶ 46).

**COURT'S DISCUSSION**

A.  Standard of Review

In any case removed from state court, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. §

1447(c).[1]  "The burden of establishing federal jurisdiction is placed upon the party seeking removal."  Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994).  "Because removal jurisdiction raises significant federalism concerns, [the court] must strictly construe removal jurisdiction."  Id.  "If federal jurisdiction is doubtful, a remand is necessary."  Id.; see Palisades Collections LLC v. Shorts, 552 F.3d 327, 336 (4th Cir. 2008) (recognizing the court's "duty to construe removal jurisdiction strictly and resolve doubts in favor of remand").

B.  Analysis

Removing defendants in their notice of removal invoke the court's diversity jurisdiction.  This court has diversity jurisdiction over civil actions "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]"  28 U.S.C. § 1332(a)(1).  "Section 1332 requires complete diversity among parties, meaning that the citizenship of every plaintiff must be different from the citizenship of every defendant."  Cent. W. Virginia Energy Co. v. Mountain State Carbon, LLC, 636 F.3d 101, 103 (4th Cir. 2011).  "For purposes of diversity jurisdiction, the citizenship of a limited liability company . . . is determined by the citizenship of all of its members."  Cent. W. Virginia Energy Co. v. Mountain State Carbon, LLC, 636 F.3d 101, 103 (4th Cir. 2011).  A corporation is a citizen of the state in which it is incorporated and of the state in which it maintains its principal place of business.  See 28 U.S.C. § 1332(c)(1); Hertz Corp. v. Friend, 559 U.S. 77, 80-81 (2010).

Plaintiff and defendant Kipling Ventures, LLC both are citizens of North Carolina, (Notice of Removal (DE 1) ¶¶ 10, 21), and complete diversity is thus lacking.  Defendants argue, however, that the citizenship of Kipling Ventures, LLC must be disregarded for diversity purposes because it was fraudulently joined in this action.

---

[1]  Internal citations and quotation marks are omitted from all citations unless otherwise specified.

"[T]he fraudulent joinder doctrine provides that diversity jurisdiction is not automatically defeated by naming non-diverse defendants." Weidman v. Exxon Mobil Corp., 776 F.3d 214, 218 (4th Cir. 2015). The doctrine "effectively permits a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." Johnson v. Am. Towers, LLC, 781 F.3d 693, 704 (4th Cir. 2015).

Invocation of the fraudulent joinder doctrine is appropriate only where "there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or . . . there has been outright fraud in the plaintiff's pleading of jurisdictional facts." Marshall v. Manville Sales Corp., 6 F.3d 229, 232-33 (4th Cir. 1993) (emphasis in original). "[U]ltimate success is not required to defeat removal." Hartley v. CSX Transp., Inc., 187 F.3d 422, 426 (4th Cir. 1999). "Rather, there need be only a slight possibility of a right to relief." Id. "Once the court identifies this glimmer of hope for the plaintiff, the jurisdictional inquiry ends." Id.

"The party alleging fraudulent joinder bears a heavy burden—it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." Id. at 424. "In order to determine whether an attempted joinder is fraudulent, the court is not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available." AIDS Counseling & Testing Ctrs. v. Grp. W Television, Inc., 903 F.2d 1000, 1004 (4th Cir. 1990).

Defendants contend that plaintiff cannot establish a claim against Kipling Ventures, LLC to recover unpaid wages because plaintiff fails to adequately plead facts establishing that Kipling Venture, LLC was her employer. (Resp. (DE 25) at 1 ("Plaintiff's Complaint is devoid of a single

5

specific factual allegation that, even in a light most favorable to [p]laintiff and deferential to state court jurisdiction, could establish that Kipling Venture, LLC employed plaintiff if proven true.")).

Liability for unpaid wages under the NCWHA is conditioned on the existence of an employer-employee relationship. See N.C. Gen. Stat. § 95–25.6 ("Every employer shall pay every employee all wages and tips accruing to the employee on the regular payday." (emphasis added)). Cf. Kerr v. Marshall Univ. Bd. of Governors, 824 F.3d 62, 83 (4th Cir. 2016) (same under the Fair Labor Standards Act ("FLSA").[2] The NCWHA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." N.C. Gen.Stat. § 95–25.2 (5); see Kerr, 824 F.3d at 83.

Joint employment exists where two or more persons or entities "share, agree to allocate responsibility for, or otherwise codetermine—formally or informally, directly or indirectly—the essential terms and conditions of the worker's employment." Salinas v. Com. Interiors, Inc., 848 F.3d 125, 141 (4th Cir. 2017). Where it occurs courts treat the employment "as 'one employment' for purposes of determining compliance with [] wage and hour requirements and [] hold[] joint employers jointly and severally liable[.]" Id. at 134. Factors relevant in determining whether joint employment exists include the allocation of "the power to direct, control, or supervise the worker;" allocation of "the power to—directly or indirectly—hire or fire the worker or modify the terms or conditions of the worker's employment;" and "[w]hether, formally or as a matter of practice, the

---

[2] Although neither the Court of Appeals for the Fourth Circuit nor the North Carolina Supreme Court have directly addressed the issue in published opinions, courts generally look to case law applying the FLSA to interpret the NCWHA, particularly when seeking to define "employer" and "employee" under the NCWHA. See Armento v. Asheville Buncombe Cmty. Christian Ministry, Inc., 856 F. App'x 445, 451 (4th Cir. 2021) ("Because the NCWHA defines the relevant terms identically to the [FLSA], we may look to federal interpretations of the FLSA for guidance."); Garcia v. Frog Island Seafood, Inc., 644 F.Supp.2d 696, 707 (E.D.N.C. 2009) (applying federal decisions interpreting the term "employee" to NCWHA claims); Powell v. P2Enterprises, LLC, 247 N.C. App. 731, 733–34, 786 S.E.2d 798, 800 (2016) (same).

6

putative joint employers jointly determine, share, or allocate responsibility over functions ordinarily carried out by an employer." Salinas, 848 F.3d at 141-42.

At this stage, to defeat removal, there need only be a "slight possibility" that plaintiff will be able to prove defendant Kipling Ventures, LLC was her employer under the NCWHA jointly with the other defendants. Hartley, 187 F.3d at 426. On review of the record, such "glimmer of hope for the plaintiff" exists. Id.

Plaintiff provides in her affidavit that she was hired by Corkum "as the Assistant Vice President of Marketing/ Vice President of Strategic Communications for a company named 'Kipling Ventures.'" (Pl. Aff. (DE 23-1) ¶ 4). During the course of her employment, plaintiff was "not aware of any delineation or distinction between Kipling Ventures, LLC, Kipling Ventures Holding Co., LLC. and Kipling Reserve LLC." (Id. ¶ 7). Rather, "'Kipling Ventures' was presented as being a unified entity with defendant Ramsden and Mr. Corkum sharing equally in its management and operation, including with respect to [plaintiff's] employment." (Id. ¶ 8).

For instance, "shortly after being hired, [plaintiff] was instructed to create '@kiplingventures.com' email addresses for all Kipling Ventures employees." (Id. ¶ 7). In an email from Corkum, included as an exhibit, plaintiff "and other Kipling Ventures employees were instructed to use the 'Kipling Ventures email for any Kipling deals' going forward because LStar Management, LLC—another entity owned solely by Mr. Corkum—and Kipling Ventures were each 'owned by different investor groups.'" (Id..; see DE 23-3 ("[P]lease use the LStar email for LStar deals [and] the Kipling Ventures email for any Kipling deals[.]"). Consistent with those representations, in the emails exhibited defendant Ramsden and Corkum both include in their signature blocks "Kipling Ventures" generally. (See, e.g., DE 23-4). Plaintiff also includes a "Partnership Presentation" introducing the "Team and Organization Track Record" under the

7

"Kipling Ventures" name, without further delineation. (DE 23-2). Finally, plaintiff includes as an exhibit an email where counsel on behalf of defendant Ramsden provides, somewhat bewilderingly given the issues now before the court, that "any work . . . performed for [Kipling Ventures by plaintiff] would have been at the direction of Kyle Corkum and through Corkum's business—Kipling Ventures, LLC." (DE 23-5 at 2).

Defendants in opposition do not address plaintiff's affidavit or exhibits, arguing that the court should consider only plaintiff's complaint, wherein plaintiff "fails to make a single specific factual allegation to establish that Kipling Ventures, LLC could be her employer under the applicable economic realities test standard." (Defs. Resp. (DE 25) at 5). Contrary to defendants' contention, however, "the court is not bound by the allegations of the pleadings" when determining whether an attempted joinder is fraudulent "but may instead consider the entire record, and determine the basis of joinder by any means available." AIDS Counseling., 903 F.2d at 1004.

In sum, defendants have not met their "heavy burden" of establishing fraudulent joinder and remand is required.

C.  Costs and Attorney's Fees

"An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). Ultimately, the strict standard of review under the fraudulent joinder doctrine forecloses diversity jurisdiction in the instant case. Nonetheless, defendants present reasonable arguments why the doctrine should be applied in the instant case. See In re Crescent City Estates,

8

Case 5:23-cv-00196-FL   Document 40   Filed 09/27/23   Page 8 of 9

LLC, 588 F.3d 822, 830 (4th Cir. 2009) ("Erroneous removal might very well be the result of an honest but forgivable mistake of legal judgment."). Therefore, each side will bear their own costs.

**CONCLUSION**

Based on the foregoing, plaintiff's motion to remand, (DE 22), is GRANTED. Pursuant to 28 U.S.C. § 1447(c), this case is REMANDED to the Superior Court of Wake County for further proceedings. The court declines to award costs and fees. The clerk is DIRECTED to transmit to the Superior Court of Wake County a certified copy of this order of remand, and to file on the docket herein a notice of such transmittal.

SO ORDERED, this the 27th day of September, 2023.

_____
LOUISE W. FLANAGAN
United States District Judge